# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **TERRI SHAW** | : | |
| 1228 MULFORD ROAD | : | |
| GRANDVIEW, OHIO 43212 | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:15-cv-1456 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| | : | |
| **OHIOHEALTH CORPORATION** | : | |
| d.b.a OhioHealth | : | |
| 180 EAST BROAD STREET | : | |
| 34TH FLOOR | : | **Jury Demand Endorsed Herein** |
| COLUMBUS, OH 43215 | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## COMPLAINT

NOW COMES Plaintiff Terri Shaw ("Plaintiff") and proffers this Complaint for damages against OhioHealth Corporation, doing business as OhioHealth ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Franklin County, Ohio.

2. Defendant OhioHealth Corporation is an Ohio Corporation doing business in the Southern District of Ohio. OhioHealth Corporation does business as OhioHealth.

3. Plaintiff is an "eligible employee" as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2).

1

4. Plaintiff is an employee as that term is defined under the Family Medical Leave Act ("FMLA"), and as defined by the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA") and by O.R.C. Chapter 4112.

5. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A), and as defined by the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA") and by O.R.C. Chapter 4112.

6. At all times relevant herein, Defendant was engaged in commerce or an industry or activity affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

## JURISDICTION AND VENUE

7. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

8. This action is brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

9. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that the Defendant has a facility in Columbus, Ohio, at which the events in question took place.

10. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit A.

## FACTUAL BACKGROUND

11. Plaintiff began working for Defendant in May of 2010 as a Patient Registration Representative at Grant Hospital.

12. Plaintiff's job was a full-time, hourly position based on a 40-hour work week.

13. Plaintiff's job duties included but are not limited to: providing registration services for inpatient, outpatient, and emergency room patients, collecting information from patients and updating patient information, if necessary.

14. In April of 2012, Plaintiff was involved in a motor vehicle accident that was not her fault and the other individual involved was cited. As a result, Plaintiff was diagnosed with a disability and suffered symptoms from that disability.

15. Specifically, Plaintiff was diagnosed with a sprain and strain of her left leg and bulging discs in her back.

16. Plaintiff's doctor created a treatment and therapy plan for her and she was instructed to attend doctor's appointments and therapy sessions.

17. Plaintiff's Supervisor, LaTanya White, instructed Plaintiff to apply for intermittent FMLA leave, for absences related to her disability.

18. Plaintiff applied for intermittent FMLA leave and provided Defendant with documentation from her doctor that indicated she needed FMLA leave 4-6 times per month, for flare-ups related to her disability and to attend medical appointments.

19. Plaintiff was approved for intermittent FMLA leave in May of 2012.

20. Upon being approved for FMLA leave, Plaintiff was reminded of Defendant's policy regarding providing notice of the need to take FMLA leave.

21. Specifically, Defendant's policy requires associates to provide notice to Defendant's Associate Health and Wellness Department of the need for leave. For leave that is foreseeable, an associate must provide 30 days notice, if possible.

22. For leave that is unforeseeable, an associate must provide notice as soon as practicable, consistent with the FMLA.

23. Plaintiff was also required to comply with Defendant's Leave of Absence Policy in relation to her FMLA leave. Defendant's Leave of Absence Policy dictates when the need for leave is unforeseeable, the employee must provide notice to Defendant as soon as practicable.

24. Plaintiff was later given a departmental call-off policy that required her to provide Defendant with two hours notice if she needed to use intermittent FMLA leave. This policy ultimately governed Plaintiff's use of intermittent FMLA leave.

25. On or about May 16, 2012, Plaintiff received a performance review from her Supervisor, LaTanya White for the time period of May 2011 - May 2012. She received almost all 5's ("Excellent") and 4's ("Commendable") ratings.

26. Plaintiff's intermittent FMLA leave was re-certified and she was eventually approved for intermittent FMLA leave through May of 2013.

27. Whenever Plaintiff needed to use FMLA leave, she was instructed by her Director, Joe Moorehead, to inform LaTanya White.

28. Plaintiff began to experience problems with Joe Moorehead when she would exercise her right to intermittent FMLA leave.

29. Specifically, Joe Moorehead issued written discipline to Plaintiff for absences that were protected by FMLA. He also encouraged Plaintiff to "push back" against her doctors, and told her to reschedule her medical appointments so she would not miss work. Mr. Moorehead often chastised Plaintiff for not being able to work when she needed FMLA.

30. Plaintiff's FMLA leave was the only issue she experienced related to her work.

31. Plaintiff always received positive performance reviews.

32. In fact, Plaintiff's 2011-2012 performance review, given by LaTanya White, says she is an "asset to the company" and rates her "Excellent" in most categories of the review. It does not mention any performance problems.

33. On or about January 7, 2013, Plaintiff was written up by Joe Moorehead, for not giving two hours notice prior to taking FMLA leave.

34. Plaintiff did not agree with this write-up. She could not have provided two hours notice due to a symptom flare-up, so she contacted Defendant's Human Resources Department.

35. At that time, Plaintiff also provided Defendant with a doctor's note stating she could not provide two hours notice of her intent to take intermittent FMLA leave because her flare-ups were unpredictable.

36. Plaintiff's write-up from January 7, 2013 was used against her for future disciplinary actions, including the Final Written Warning she received on May 6, 2013.

37. After Plaintiff complained regarding the January 7, 2013 write-up, Moorehead began to retaliate against her.

38. Moorehead continued to issue disciplinary action to Plaintiff for her failure to comply with Defendant's two-hour call off procedure, even after Defendant received the doctor's note explaining that Plaintiff's flare-ups were unpredictable.

39. On or about January 16, 2013, Moorehead called Plaintiff into his office to inquire as to when her doctor's appointments were. Moorehead instructed Plaintiff to reschedule her doctor's appointments during times she was not working.

40. Plaintiff refused to reschedule her appointments because doing so would interfere with her recovery and treatment schedule.

41. On or about January 22, 2013, Plaintiff received another Written Warning from LaTanya White.

42. The write-up indicates Plaintiff has 4.5 attendance "occurrences". Two of these absences, 10/29/12 and 1/18/2013, were FMLA protected absences that Defendant refused to correct after repeated written requests from Plaintiff.

43. Plaintiff continued to be treated for symptoms related to her disability, including an admission to Dublin Methodist Hospital in April of 2013.

44. On or about April 23, 2013, Plaintiff was experiencing symptoms related to her disability and was unable to make it to work, so she notified Defendant that she needed to use FMLA leave.

45. Three days later, on April 26, 2013, Plaintiff received a write-up from Moorehead for "written failure to follow departmental call-off policy." However, Plaintiff's time sheet shows she clocked in and out at her normal time on this day and worked a full, eight-hour shift.

46. On or about May 6, 2013, Plaintiff received a Final Written Warning from Moorehead, alleging she spoke to a patient inappropriately about her pregnancy and interfered with a doctor's care of a patient.

47. Plaintiff adamantly denies this.

48. On or about May 7, 2013, Plaintiff wrote a Rebuttal to the Final Written Warning, indicating she felt she was being retaliated against for using FMLA.

49. Plaintiff's intermittent FMLA leave was approved until on or about May 25, 2013, at which point it would expire and need to be recertified.

50. Plaintiff's doctor, Dr. Douglas R. Schumacher, filled out her FMLA recertification paperwork and Plaintiff returned it to Defendant on or about May 6, 2013.

51. Nancy Miller, CRC, Workplace Accommodation Specialist for OhioHealth, informed Plaintiff that her FMLA recertification was "pended" because the signature of the physician did not match the remainder of the writing on the FMLA form.

52. Nothing in 29 U.S.C. §2613(a) & (b) makes a certification insufficient if the employee happens to complete some or all of the information on the certification form.

53. The critical point is that the certification be "issued" by the health care provider and contain the information required in §2613(b). Plaintiff's certification was issued by Dr. Schumacher and contained the information required in §2613(b).

54. If Defendant believed that Plaintiff's certification was "invalid," it could have obtained a second medical opinion. It did not do so but rather instructed Plaintiff to go back to Dr. Schumacher, a clear violation of the FMLA.

55. Plaintiff told Ms. Miller she was scheduled to see Dr. Schumacher again on May 24, 2013, at which time she would ask him to fill out the paperwork again.

56. On or about May 22, 2013, two days before Plaintiff's FMLA leave was to expire, she received an email from Nancy Miller, where Ms. Miller stated she was in the process of drafting a letter to Plaintiff's physician that outlined the specific medical clarification and/or documentation that was necessary to approve or deny Plaintiff's request for intermittent FMLA.

57. Ms. Miller told Plaintiff she would have the letter to her by Friday, May 24, 2013, one day before Plaintiff's FMLA was to expire. Ms. Miller told Plaintiff that once her physician responded to the letter, a decision would be made regarding her FMLA.

58. Plaintiff requested Ms. Miller send her the letter by 11:00 a.m. on May 24, 2013, so she had time to print it and review it before attending her doctor's appointment at 3:45 p.m. Ms. Miller emailed Plaintiff at 10:57 a.m. and told her the letter was not ready yet.

7

59. Plaintiff never received the letter from Ms. Miller before her doctor's appointment. Plaintiff attended her doctor's appointment without the letter, but informed Dr. Schumacher that she had been instructed to have him provide additional information to approve her FMLA leave.

60. Dr. Schumacher told Plaintiff she would have to schedule another appointment after she received the letter.

61. Once Plaintiff received the letter from Ms. Miller, she scheduled another appointment with Dr. Schumacher that took place on or about June 4, 2013.

62. Dr. Schumacher provided Defendant with another letter, explaining Plaintiff's need for FMLA leave. The letter confirmed that her absence patterns were consistent with her flare-ups, and reiterated that Plaintiff's flare-ups made it impossible for her to give two hours notice when using intermittent FMLA leave.

63. Plaintiff faxed Dr. Schumacher's letter to Defendant on June 4, 2013.

64. By requiring further information from Dr. Schumacher, Defendant interfered with Plaintiff's FMLA approval process.

65. On or about June 16, 2013, Plaintiff inadvertently made a clerical error while inputting patient information. She immediately realized her mistake, and alerted the proper individual, Lead Supervisor, Kelly Chambers. Ms. Chambers corrected the error before any harm or confusion was caused.

66. Joe Moorehead put Plaintiff on a fact-finding suspension for the error.

67. On or about June 21, 2013, Plaintiff filed a Charge of Discrimination with the Ohio Civil Rights Commission.

68. On July 1, 2013, Plaintiff was terminated. The reasons for Plaintiff's termination are pretextual and are based, at least in part, on her use of FMLA leave and her requests for a reasonable accommodation.

69. Defendant contends it did not consider Plaintiff's FMLA protected absences when terminating her, but several of her FMLA protected absences are clearly listed on the face of her termination documents.

## COUNT I
### Retaliation - Violation of the Family Medical Leave Act

70. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

71. Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2).

72. Defendants are "employers" as defined by 29 U.S.C. § 2611(4)(A).

73. Plaintiff took approved leave under the FMLA prior to her termination.

74. Plaintiff did not take more than 12 weeks of FMLA leave.

75. Plaintiff suffered an adverse employment action when Defendant terminated her from her position in retaliation for requesting FMLA leave and taking FMLA leave for treatment related to her serious medical condition.

76. Defendant violated the FMLA by retaliating against Plaintiff by terminating her from her position after she exercised her right to use intermittent FMLA leave and by issuing multiple disciplinary actions to Plaintiff for FMLA protected absences.

77. Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

78. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II
### Disability Discrimination – R.C. §4112.02

79. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

80. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

81. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

82. Defendant knew Plaintiff was disabled and/or regarded her as disabled.

83. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability.

84. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, creating false reasons for her termination, issuing discipline to her for absences related to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT III
### Disability Discrimination - Americans with Disabilities Act

87. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

88. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

89. Plaintiff is an otherwise qualified individual.

90. Defendant knew or had reason to know Plaintiff suffered from a disability, and/or regarded her as disabled.

91. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability.

92. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, creating false reasons for her termination, issuing discipline to her for absences related to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

93. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

94. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
### Interference - Violation of the Family Medical Leave Act

95. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

96. Plaintiff exercised her rights under the FMLA, as she gave notice to Defendant that she intended to take FMLA leave, was approved for FMLA leave and took FMLA leave for treatment related to her serious medical condition.

97. Defendant interfered with Plaintiff's FMLA rights by issuing discipline to Plaintiff for absences that were protected under the FMLA, by refusing to accept Plaintiff's sufficient FMLA recertification paperwork in a timely manner because the handwriting on the paperwork was not all the same, by not following the proper procedure if it doubted the validity of Plaintiff's FMLA recertification paperwork, by forcing Plaintiff to comply with a call-off policy that it knew she was medically unable to comply with, and for retaliating against Plaintiff for using FMLA.

98. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

99. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT V
### Retaliation- R.C. §4112.02

100. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

101. Plaintiff engaged in a protected activity by requesting reasonable accommodation for her disability.

102. Defendant knew Plaintiff engaged in a protected activity.

103. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, creating false reasons for her termination, issuing discipline to her for absences related to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

104. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

105. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VI
### Retaliation- Americans with Disabilities Act

106. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

107. Plaintiff engaged in a protected activity by requesting reasonable accommodation for her disability.

108. Defendant knew Plaintiff engaged in a protected activity.

109. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, creating false reasons for her termination, issuing discipline to her for absences related to her disability, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment.

110. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

111. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VII
### Failure to Accommodate- Americans with Disabilities Act

112. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

113. At all times material herein, Plaintiff was disabled, or regarded as being disabled, as defined in 42 U.S.C. §12102.

114. Defendant knew or had reason to know that Plaintiff suffered from a disability, and/or regarded her as disabled.

115. Plaintiff was an otherwise qualified individual with a disability.

116. Plaintiff requested reasonable accommodations for her disability when she asked on several occasions to attend doctor's appointment in connection with her disability.

117. Such reasonable accommodations were possible for Defendant to provide.

118. Defendant violated the ADA by failing to accommodate Plaintiff's disability by issuing discipline to Plaintiff for absences related to her disability.

119. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to

pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

120. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VIII
### Failure to Accommodate- R.C. §4112.02

121. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

122. At all times herein, Plaintiff suffered from an impairment within the meaning of R.C. §4112.01.

123. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01

124. Defendant knew or had reason to know Plaintiff suffered from a disability and/or regarded her as disabled.

125. Plaintiff requested reasonable accommodation for her disability when she asked on several occasions to attend doctor's appointments in connection with her disability.

126. Such reasonable accommodations were possible for Defendant to provide.

127. Defendant violated R.C. §4112.02 by failing to accommodate Plaintiff's disability, by retaliating against Plaintiff for seeking a reasonable accommodation, and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Rachel A. Sabo, Esq.
Rachel A. Sabo (0089226)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
(Rachel@thefriedmannfirm.com)
614-610-9757 (Phone)
614-737-9812 (Fax)

Peter G. Friedmann (0089293)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
(Pete@thefriedmannfirm.com)
614-610-9756 (Phone)
614-737-9812 (Fax)

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Rachel A. Sabo
Rachel A. Sabo (0089226)